**Shiryak, Bowman, Anderson, Gill & Kadochnikov, LLP**
Alexander Kadochnikov
80-02 Kew Gardens Road, Suite 600
Kew Gardens, NY 11415
718-577-3261
Attorney ID # 053142013
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION**

-----------------------------------------------------------x
DMITRIY KICHIN,

                     Plaintiff,

-against-

C.W. CLARKE ASSOCIATES, INC.
JAMES SCOTT

                     Defendants.
-----------------------------------------------------------x

**Docket No**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, DMITRIY KICHIN ("Plaintiff"), by way of Complaint against Defendants C.W. CLARKE ASSOCIATES, INC. ("CW Clark"), JAMES SCOTT ("Scott") (collectively "Defendants"), alleges the following:

## INTRODUCTION

1. This action arises from Defendants' breach of partnership agreement, fraudulent misrepresentation, and other wrongful acts that caused substantial financial harm to Plaintiff. Defendants induced Plaintiff to leave a lucrative job, invest significant resources, and bring a highly skilled team to a failing business under the false pretense of a partnership. Ultimately, Defendants renege on their promises, depriving Plaintiff of his rightful ownership and profits.

## PARTIES

2. Plaintiff, Dmitriy Kichin, is an individual domiciled in Pennsylvania.

3. Defendant, CW Clark, is a corporation organized under the laws of New Jersey, with its principal place of business located in Gloucester City, New Jersey.

4. Defendant, James Scott, is an individual residing in New Jersey, who is the principal owner and operator of CW Clark.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states (Plaintiff is a citizen of Pennsylvania, and Defendants are citizens of New Jersey).

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

### A. The Partnership Agreement and Initial Discussions

7. In or around early November 2022, Defendant Scott, acting on behalf of himself and CW Clark, initiated discussions with Plaintiff regarding a potential partnership to revitalize and manage a failing car dealership, CW Clark Automotive, LLC, located in Gloucester City, New Jersey.

8. On or about November 8, 2022, Plaintiff and Scott met for the first time at a diner near CW Clark's dealership. During this meeting, the following was discussed and agreed upon:

   a. **Ownership Structure.** Plaintiff would receive a 50% ownership interest in CW Clark, with the remaining 50% retained by Scott.

b. **Capital Contribution.** Both Plaintiff and Scott would contribute $500,000 each to the business, which would be used as operating capital for the dealership, including the purchase of inventory, marketing, and operational expenses.

c. **Operational Control.** Plaintiff would have full operational control of the dealership, including the authority to hire and fire staff, manage day-to-day operations, and implement business strategies.

d. **Profit Sharing.** Profits from the dealership would be split equally between Plaintiff and Scott, reflecting their equal ownership interests.

e. **Use of Plaintiff's Team.** Plaintiff would bring his experienced team from Toyota to assist in turning around the dealership. This team included highly skilled individuals who had a proven track record of success in increasing sales and profitability.

f. **Future Plans.** The parties discussed long-term goals, including expanding the dealership's inventory, improving customer traffic, and enhancing the dealership's reputation in the community.

9. On November 10, 2022, Scott contacted Plaintiff to discuss the list of banks that CW Clark was signed up with, indicating a willingness to move forward with the partnership. Plaintiff promptly provided Scott with the requested information, further solidifying their mutual understanding and agreement.

10. On November 15, 2022, Plaintiff and Scott met again at the same diner to finalize the details of the partnership. During this meeting:

a. Scott confirmed the terms of the partnership, reiterating that Plaintiff would receive a 50% ownership interest and have full operational control.

    b. The parties discussed the existing operations of CW Clark, including the lack of customer traffic, underutilization of bank financing, and the incompetence of existing staff. Scott authorized Plaintiff to take immediate action to address these issues.

    c. Scott expressed his confidence in Plaintiff's ability to turn around the dealership and emphasized that he had conducted due diligence on Plaintiff's background and capabilities, finding them exemplary.

    d. The parties agreed to reconvene in two days to begin implementing the partnership and transition plans.

11. On November 19, 2022, Plaintiff and Scott held a third meeting at CW Clark's office, which was also attended by Plaintiff's business associate, Vlad Vlasov. During this meeting:

    a. Plaintiff formally accepted the partnership offer and expressed his commitment to investing $500,000 in the business.

    b. Scott reiterated that Plaintiff would have full authority to manage the dealership, including hiring and firing decisions, inventory management, and sales strategies.

    c. Plaintiff presented a detailed plan for increasing sales, improving customer service, and optimizing inventory management. Scott and Worthington expressed their approval of the plan.

    d. Scott introduced Plaintiff to the dealership staff, including his operating manager James Worthington, salespersons Art and Bill as well as other key personnel, affirming that Plaintiff was now a partner in the business with full operational control.

    e. Scott proceeded to turn over his office to Plaintiff and Vlasov to interview existing staff and make determinations on who stays or who gets let go. Bill was let go, James Worthington and Art stayed on for the transition.

    f. Scott emphasized that the partnership was a "perfect match" and expressed optimism about the future of the dealership under Plaintiff's management.

### B. Plaintiff's Contributions and Actions in Compliance with the Agreement

12. In reliance on Scott's representations and the terms of the partnership agreement, Plaintiff immediately began taking steps to fulfill his obligations under the agreement:

    a. **Resignation from Lucrative Employment.** On or about November 20, 2022, Plaintiff resigned from his position at a Toyota dealership, where he earned approximately $300,000 per year. Plaintiff left this secure and high-paying job based on Scott's promise of partnership and ownership in CW Clark.

    b. **Securing Financing.** On or about November 21, 2022, Plaintiff secured a Home Equity Line of Credit (HELOC) on his home in New Jersey and borrowed $100,000 from his brother to fulfill his $500,000 capital contribution to the partnership. Plaintiff began the refinancing process immediately after the second meeting on November 15, 2022.

    c. **Bringing His Team to CW Clark.** On November 21, 2022, Plaintiff brought his highly skilled team from Toyota to CW Clark, including Vlad Vlasov (assistant manager), Alexandra Payne (Plaintiff's assistant and funder who finalized transactions with banks), Peter Young (a Business Development Center caller), Thomas Crone, Igor Tsesliv, Juan Pichardo, Kelvin and Coby Evans (salespersons), and Tatiana Castillo (salesperson). This team was instrumental in

implementing new strategies and significantly improving the dealership's operations.

    d. **Implementing New Business Strategies.** On or about November 22, 2022, Plaintiff began implementing new strategies to increase sales, improve customer service, and optimize inventory management. Plaintiff introduced new customer lead generation techniques, credit application processes, and staff training programs that had proven successful at his previous employer.

    e. **Operational Control.** From November 21, 2022, onwards, Plaintiff exercised his authority as granted under the partnership agreement by managing day-to-day operations, including hiring and firing staff, negotiating with banks and suppliers, and making key decisions regarding inventory and sales strategies.

13. As a direct result of Plaintiff's contributions and the implementation of his business strategies, CW Clark's performance improved significantly:

    a. **Increased Sales.** In the first month of Plaintiff's management, CW Clark's car sales doubled from an average of 20 cars per month to approximately 49 cars.

    b. **Improved Customer Traffic.** Plaintiff's strategies successfully increased customer traffic to the dealership, addressing one of the primary issues identified by Scott.

    c. **Enhanced Financial Performance.** The dealership's gross profits increased as a result of the improved sales and operational efficiency brought about by Plaintiff's management.

    d. **Streamlined Operations.** Plaintiff's management resulted in more efficient operations, including better inventory turnover, improved staff productivity, and enhanced customer satisfaction.

### C. Defendant's Breach and Wrongful Conduct

14. Despite Plaintiff's substantial contributions and the significant improvements in the dealership's performance, Scott began stalling on the finalization of the partnership.

15. On or about January 18, 2023, Scott informed Plaintiff during a private meeting that he should "hold off" on investing the $500,000 capital contribution. Scott provided no valid reason for this delay and became increasingly evasive in subsequent communications.

16. Throughout January and February 2023, Plaintiff repeatedly sought clarification from Scott and Worthington about the status of the partnership. Scott and Worthington assured Plaintiff that the partnership was still in place and encouraged him to continue managing the dealership.

17. On or about February 28, 2023, Plaintiff held a meeting with Scott and Worthington to discuss the progress of the dealership and the finalization of the partnership. Scott again reassured Plaintiff that the partnership would be formalized soon and encouraged him to continue his efforts to improve the dealership.

18. On or about March 15, 2023, Plaintiff noticed a shift in Scott's attitude and responsiveness. Scott became increasingly distant, and his communications with Plaintiff were limited to vague assurances that the partnership was still on track.

19. On April 28, 2023, Scott informed Plaintiff in a brief and unexpected conversation that the deal would not proceed, effectively reneging on the partnership agreement and depriving Plaintiff of his promised ownership interest and profits.

20. As a result of Defendants' actions, Plaintiff ceased all work for CW Clark on April 29, 2023, having suffered significant financial losses, including the loss of income, the investment in securing financing, and the costs associated with bringing his team to CW Clark.

21. Defendants' conduct was willful, malicious, and in bad faith, designed to exploit Plaintiff's expertise and resources without providing the promised compensation or ownership interest.

## FIRST CAUSE OF ACTION
(Breach of Contract against CW Clark and Scott)

22. Plaintiff repeats and realleges and incorporated all the allegations made in paragraphs 1 through 23 as if fully set forth herein.

23. Plaintiff and Scott, on behalf of CW Clark, entered into a valid and enforceable oral contract, wherein Plaintiff was to receive a 50% ownership interest in CW Clark in exchange for his $500,000 contribution and operational management.

24. Plaintif conditions, covenants, and promises required on his part under the contract, including leaving his previous employment, preparing to invest $500,000, and managing the dealership's operations.

25. Defendants breached the contract by refusing to proceed with the partnership, failing to grant Plaintiff the promised ownership interest, and unjustly benefiting from Plaintiff's contributions.

26. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages, including lost income, financial losses, and emotional distress, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Promissory Estoppel Against CW Clark and Scott)

27. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 28 as if fully set forth herein.

28. Defendants made clear and definite promises to Plaintiff, including the promise of a 50% ownership interest and operational control in CW Clark.

29. Defendants reasonably expected that Plaintiff would rely on these promises, and Plaintiff did in fact rely on them to his detriment, leaving his employment, securing financing, and managing the dealership.

30. Plaintiff's reliance on Defendants' promises was reasonable and foreseeable.

31. Injustice can only be avoided by enforcing Defendants' promises and compensating Plaintiff for his reliance losses.

## THIRD CAUSE OF ACTION
(Unjust Enrichment Against CW Clark and Scott)

32. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 33 as if fully set forth herein.

33. Plaintiff conferred a substantial benefit on Defendants by contributing his expertise, time, and resources to improve the operations of CW Clark, which Defendants accepted and retained.

34. Defendants were enriched at Plaintiff's expense by retaining the benefits of Plaintiff's contributions without providing the promised ownership interest or compensation.

35. It would be unjust to allow Defendants to retain these benefits without compensating Plaintiff.

## FOURTH CAUSE OF ACTION
(Fraudulent Misrepresentation Against CW Clark and Scott)

36. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

37. Defendants knowingly made false representations to Plaintiff regarding the partnership, including the promise of a 50% ownership interest and operational control.

38. Defendants made these representations with the intent to induce Plaintiff to rely on them and to leave his employment and contribute his resources to CW Clark.

39. Plaintiff reasonably relied on Defendants' misrepresentations to his detriment.

40. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff has suffered damages, including lost income, financial losses, and emotional distress.

## FIFTH CAUSE OF ACTION
(Breach of Fiduciary Duty Against Scott)

41. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

42. A fiduciary relationship existed between Plaintiff and Scott based on their partnership agreement, requiring Scott to act in good faith and in the best interests of Plaintiff.

43. Scott breached his fiduciary duty by engaging in conduct that was self-serving, deceptive, and detrimental to Plaintiff, including reneging on the partnership agreement and excluding Plaintiff from the business.

44. As a direct and proximate result of Scott's breach of fiduciary duty, Plaintiff has suffered damages, including lost income, financial losses, and emotional distress.

## SIXTH CAUSE OF ACTION
(Negligent Misrepresentation Against CW Clark and Scott)

45. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

46. Defendants made representations to Plaintiff regarding the partnership and ownership interest without exercising reasonable care in ensuring their accuracy and truthfulness.

47. Plaintiff reasonably relied on these representations to his detriment, leaving his employment and contributing resources to CW Clark.

48. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered damages, including lost income, financial losses, and emotional distress.

## EIGHT CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and Fair Dealing Against CW Clark and Scott)

49. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

50. Every contract in New Jersey includes an implied covenant of good faith and fair dealing, requiring parties to act in a manner that does not destroy the other party's right to receive the benefits of the contract.

51. Defendants breached the implied covenant of good faith and fair dealing by acting in bad faith, stalling the investment process, and ultimately refusing to honor the partnership agreement.

52. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages, including lost income, financial losses, and emotional distress.

## DEMAND FOR JURY TRIAL

53. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dmitriy Kichin respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

a. For compensatory damages in an amount to be determined at trial, including but not limited to lost income, financial losses, in the amount not less than $1,000,000;

b. For punitive damages to the extent permitted by law, to punish Defendants for their wrongful conduct and to deter similar conduct in the future;

c. For restitution of any unjust enrichment received by Defendants at Plaintiff's expense;

d. For attorneys' fees and costs as allowed by law;

e. For pre- and post-judgment interest as allowed by law;

f. For a declaratory judgment establishing Plaintiff's rights under the partnership agreement;

g. For such other and further relief as this Court deems just and proper.

Date: November 16, 2025
      Kew Gardens, New York

/s/ Kadochnikov
_____

Alexander Kadochnikov, Esq.
**SHIRYAK, BOWMAN, ANDERSON GILL & KADOCHIKOV, LLP**
80-02 Kew Gardens Road, Suite 600
Kew Gardens, New York 11415
Tel: (718) 263-6800
akadochnikov@sgabk.com
*Attorneys for Plaintif*