

Laura D. Ruccolo
856.914.2084
lruccolo@capehart.com

July 7, 2025

Via ECF
Honorable Mathew J. Skahill, U.S.M.J.
United States District Court, District of New Jersey Camden
Mitchell H. Cohen Building & U.S. Cthse.
4th & Cooper Sts.
Camden, NJ 08101

    Re:    C.W. Clarke ads. Kichin, Dmitriy
            Our File No.  10413-67258.e
            Docket No.  1:24-cv-10545-ESK-MJS

Dear Judge Skahill:

Pursuant to Your Honor's text Order of June 16, 2025 Defendant on behalf of both parties with the contribution of Plaintiff provides the following summarizing the parties unresolved discovery disputes.

Summary of Case:  Plaintiff asserts that in November, 2022 he entered into an oral contract with Jim Scott to purchase 50% of the shares in CW Clark Associates, Inc. ("CW Clark") for $500,000.00 and that Jim Scott agreed to take the $500,000.00 and reinvest it in the corporation. Plaintiff contends that Defendant breached the contract in November 22, 2022 by refusing to provide Plaintiff with 50% shares in CW Clarke.  Plaintiff admits that he never paid Jim Scott any amount of money. Defendant contends that Plaintiff did not have $500,000.00 to pay Mr. Scott in November, 2022.   Plaintiff became employed by CW Clark as a general manager in November, 2022 and was paid as a W-2 employee. Plaintiff quit his employment with CW Clark in April, 2023.  Defendant denies that there was ever any contract with Plaintiff to purchase 50% interest in CW Clarke.

In compliance with  Local Rule 37.1 the parties have met an conferred on the discovery disputes a number of times.  The parties participated a call to discuss the case and outstanding discovery issues on May 13, 2025.  On May 22, 2025 an email request for the discovery was sent by defense counsel to Plaintiff's counsel. The parties subsequently conferred about the additional production.  The parties again participated in another call on June 17, 2025 and again on July 3, 2025.  Discovery disputes remain.

**DEFENDANT'S OUTSTANDING DISCOVERY REQUESTS:**

1. Bank Records:  Defendant seeks Plaintiff's bank records, which were identified in Plaintiff's Rule 26 Disclosures to substantiate Plaintiff's claim that he was able to pay $500,000 allegedly agreed to in November, 2022.  Plaintiff has produced documents bates stamped DK309-318 which are bank statements from American Express from September 16, 2022- December 16,

July 7, 2025
Page 2

2022.  No other bank statements were produced for the time period of November 1, 2022 to December 31, 2022.  If Plaintiff is representing that these are the only bank statements representing his ability to pay the alleged agreed to amount for the stock, then there is no discovery dispute.  If however, Plaintiff claims to have other bank accounts in the time period from which he could have paid the alleged agreed to consideration then those bank records need to be produced or barred at the time of summary judgment and trial.

2.  Request for Admissions.  Requests for admissions are a powerful and relevant tool in discovery.  If at the point a party is served with a request for admission of a fact that it now knows to be true, it must admit that fact, even if that admission will gut its case and subject it to summary judgment. That is what Fed. R. Civ. P. 36 was intended to do—narrow the issues for trial, or even altogether obviate the need for trial. *Shelton v. Fast Advance Funding, LLC,* 805 F. App'x 156, 157 (3d Cir. 2020). Requests for admission  are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case." .  Also, "application of law to fact is a perfectly acceptable matter of which
to request an admission." <u>Rhone-Poulenc</u>, 1992 WL 394425, at *6. *See also, First Options of Chicago, Inc. v. Wallenstein*, No. CIV. A. 92-5770, 1996 U.S. Dist. LEXIS 18774, 1996 WL 729816, *3, n.5 (E.D. Pa. Dec. 17, 1996); *Katiroll Co. v. Kati Roll & Platters, Inc.*, Civil Action No. 10-3620 (MAS), 2013 U.S. Dist. LEXIS 199809, at *11 (D.N.J. Feb. 11, 2013)

Defendant has served Plaintiff with Requests for Admissions that are relevant to the facts claimed by Plaintiff and Defendants' defenses.  Plaintiff has improperly objected to as either "opinions" or conclusions of law Requests #12-26, 35-41, 43, 45, 48, 50, 53, and 54.

Plaintiff has produced no evidence to dispute that the was an employee of CW Clark and paid as an employee, yet he objects to the relevant requests for admissions regarding same. Requests for Admission ("**RA**") **#12-15**.

Plaintiff was also asked to admit that he never held any ownership interest in a new or used car dealership business. He improperly objects to this as a legal conclusion when it is a fact. **RA16**.

Plaintiff objected to **RA #17 -19** which asks him to admit that certain job duties are those of a general manager in a car dealership and that he performed those duties for CW Clark in 2022. The objection that the request seeks an opinion is improper.

**RA #20-26** requests Plaintiff to admit that he never employed certain individuals (who are alleged to be part of his team in the Complaint.  Plaintiff improperly objected that he this information is in the exclusive possession of Defendants.  The objection makes no sense. Plaintiff has to know whether or not he ever employed these individuals or not.

**RA #35-40** requests Plaintiff to admit that certain individuals were employed by CW Clarke in 2022.  Plaintiff improperly objects that this information is in the exclusive possession of Defendant. Plaintiff meanwhile worked for CW Clark and claims to have brought them to work for CW Clark in 2022.

July 7, 2025
Page 3

**RA #41** asks Plaintiff to admit his representations on his LinkedIn profile that he was the General Manager of CW Clark in November, 2022 to April 2023. Plaintiff improperly objects that this is a legal conclusion, when it is clearly a fact.

**RA #43** requests Plaintiff to admit that after he quit his employment with CW Clark he was seeking his "pay". There are text messages to this effect. Plaintiff improperly objected to this request as a legal conclusion.

**RA #45** requests Plaintiff to admit that he did not incur any costs with regard to CW Clark's employment of specific individuals. Plaintiff improperly objects to the interrogatory as unclear because he does not understand what "costs" means. This objection is improper.

**RA #48** requests Plaintiff to admit that he voluntarily quit his employment with CW Clark. Plaintiff improperly objects to the request on the basis that he objects to the "characterization" of his association with CW Clark.

**RA #50** requests Plaintiff to admit that there was not agreement that James Scott would sell 50% of his stock in CW Clark to Plaintiff on a specific date. Plaintiff improperly objects to this request because it requires "commentary". Either was a specific agreement or there was not.

**RA #54** asks Plaintiff to admit that CW Clark's expenses increased in November, 2022 due to Plaintiff's hiring of additional employees. Plaintiff improperly objected to the request claiming it is an opinion, when it is clearly a fact.

Defendant contends that Plaintiff refuses to respond to the requests for admission to avoid a motion for summary judgment.

### PLAINTIFF'S POSITION WITH RESPECT TO DEFENDANTS' CLAIM FOR OUTSTANDING DISCOVERY:

1. Defendants' Requests For Admission ("RFA")

Plaintiff objects to many of Defendant's RFAs on the grounds that they fail to comply with Rule 36's purpose and structure. Under FRCP 36 and controlling Third Circuit case law, requests for admissions must be: "[S]imple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification…." *United Coal Companies v. Powell Const. Co*., 839 F.2d 958, 968 (3d Cir. 1988).

**RFA # 12- 15:** asks Plaintiff to admit that he was paid as an employee – a term that embeds the core legal dispute between the parties.

**RFA #17-19** asks the Plaintiff to speculate on the job duties of a general manager. The very definition of something that cannot be denied with minimum explanation or qualification.

July 7, 2025
Page  4

**RFA #20–26 and #35–40**: Ask Plaintiff to admit or deny the employment status of third parties. Plaintiff objects as he does not control CW Clarke's employment records and cannot speculate as to individuals' formal employment status with Defendants.

**RFA #50**: Asks Plaintiff to admit there was no agreement to purchase stock on a specific date. This is a central legal issue in dispute and not a proper subject of an RFA.

**RFA #45**: References "costs" incurred with respect to certain individuals without defining what "costs" means in this context—rendering it vague.

**RFA #54**: Requests admission that CW Clarke's expenses increased due to Plaintiff's hiring of employees. This would require economic analysis outside Plaintiff's personal knowledge and is not an appropriate RFA.

**RFA #43 and #48**: Contain language that presupposes characterizations ("quit," "seeking pay") that are ambiguous or loaded, and Plaintiff appropriately objected.

### DEFENDANTS OUTSTANDING DISCOVERY REQUESTS

Plaintiff served Defendants with several Requests for Production of Documents ("RFP"). Defendants have either objected to or said none. The following RFPs are still at issue.

**RFP # 7**. "Produce any and all Documents, Correspondence and Communication between YOU and PLAINTIFF from November 1, 2021, until Present Concerning any profit sharing between the Plaintiff and CW CLARKE." Defendants responded "None. Plaintiff never had any partnership with James Scott or ownership interest in C. W. Clarke Associates, Inc."

However, in a letter dated May 16, 2025, Defendants expressly stated that Plaintiff was provided with a "10% gross sales profit." That admission directly relates to the subject matter of this request. Plaintiff again requested that Defendants conduct a good faith search and confirm whether responsive documents exist. No response was provided.

**RFP # 8** seeks "[a]ny and all Documents, Correspondence and Communication between YOU and any third parties from November 1, 2021, until Present Concerning any profit sharing between the Plaintiff and CW CLARKE." Defendants responded: "None. Plaintiff never had any partnership with James Scott or ownership interest in C.W. Clarke Associates, Inc."

This response is contradicted by Defendants' May 16, 2025 letter, which expressly acknowledges that Plaintiff was paid 10% of gross profit—effectively a form of profit sharing. The request seeks documents involving third parties and is directly relevant to the parties' dispute.

**RFP Nos. 10 and 11** seek communications and documents between Defendants, Plaintiff, and third parties concerning Plaintiff's commission or compensation structure. Defendants objected on

July 7, 2025
Page 5

proportionality and relevance grounds, but failed to comply with Fed. R. Civ. P. 34(b)(2)(C), which requires stating whether responsive documents are being withheld. Plaintiff requested clarification, including whether a good faith search was conducted, but has received no response.

These documents are central to the dispute. Defendants assert Plaintiff was a commissioned employee, not a profit-sharing partner. Responsive documents would show how Defendants internally characterized and documented Plaintiff's compensation.

**RFP Nos. 19, 20, and 22** seek financial and operational records, including sales reports, P&Ls, and inventory management reports. Plaintiff agreed to limit the request's scope in response to objections about time period. Defendants objected on proportionality grounds and conditioned production on entry of a confidentiality agreement. That agreement has since been entered, yet no documents have been produced.

**RFP Nos. 25 and 26** request "all documents, ESI and records from IDMS and DealerTrack relating to YOU from November 2019 to present." Defendants responded that the request "makes no sense." This response is not made in good faith. IDMS and DealerTrack are widely used dealership software platforms that manage sales, inventory, and finance data. Plaintiff previously conferred with defense counsel regarding the relevance of these systems, including during discussions about potential subpoenas to the vendors. The request is narrowly tailored, and Defendants' refusal to engage substantively is improper.

**Defendant's Response to Plaintiff's Discovery Issues.**

**RFP #7 and #8**. Defendant has responded that there are no documents responsive to the request. Plaintiff conflates commission paid to Plaintiff based on gross sales profit with sharing of profit of CW Clark

**RFP Nos. 10 and 11.** Defendants responded that there are no documents responsive. The response does not seek calculations regarding commissions. Plaintiff was provided the opportunity to amend the request; he chose not to.

**RFP Nos. 10 and 11.** There are no documents responsive to the request.

**RFP Nos. 19, 20, and 22.** Defendant objected to the requests as not proportionate to the needs of the case. The request has nothing to do with Plaintiff claim that Defendant's breached the agreement to provide Plaintiff a 50% owner in CW Clarke, even though he admits to never having made any payment for the shares.

**RFP Nos. 25 and 26.** The requests were objected to as being overly broad and unclear. The requests are also not proportionate to the needs of the case. The request has nothing to do with Plaintiff claim that Defendant's breached the agreement to provide Plaintiff a 50% owner in CW Clarke, even though he admits to never having made any payment for the shares. Plaintiff was provided the opportunity to identify what documents he was specifically seeking; he provided no clarification.

July 7, 2025
Page  6

The parties have not been able to resolve these disputes despite good faith attempts to do so.

Respectfully submitted,

CAPEHART & SCATCHARD, P.A.

**Laura D. Ruccolo**

Laura D. Ruccolo

LDR/ldr
14715896